Good morning, Justices. My name is Anthony Pareik. I represent the plaintiff appellant Amir Jakupovic in this matter before the court. Your Honor, this appeal is brought asking the court to review and overturn the decision of Judge Coleman in granting a motion to dismiss under 12b-6 without allowing leave to amend, without allowing plaintiff to conduct any discovery or develop their case. The case was brought, as the panel is aware, under the 8th and 14th amendments. Before you get too deeply into it, it's my recollection that in the district court the county suggested that this litigation is barred by the Rooker-Feldman doctrine, that there was a lake county courts. It's concluded, so we have a final judgment after he pleads guilty and he's sentenced. And what you're trying to do, the argument would be, is undo what the state courts have done. And that, of course, is precisely what Rooker-Feldman prohibits. It does not give the federal courts jurisdiction to effectively sit in review of state courts. So I would be interested in your response to that. Well, I would agree, Judge, if we were attacking the guilty plea, which the plaintiff appellant, Mr. Jakupovic, entered into simply to gain his freedom because he was put into a catch-22 situation where, because he was a non-resident of Lake County, and the probation as well as state's attorneys insisted that he be placed on electronic monitoring, which was an impossibility since he was not a resident of Lake County, and they knew that as part of their pre-bond hearing investigation. But why isn't that something, if the state has set up a bond system or a pretrial release system that is flawed in some fashion, maybe there's some constitutional problem with saying you have to have a Lake County residence, why isn't that something the state courts are entirely capable of evaluating? There are appellate courts in Illinois, there's a Supreme Court. Well, we're not appealing, again, the judgment of the state court. No, I understand, but you are trying to correct the insistence, and I have another question about that, but let's stick with Rooker-Feldman right now. Why do you think there's an exception? Right, so again, we're not appealing the judgment of the state court, we're not looking for a second bite of the apple, which is what Rooker-Feldman doctrine prevents. What we're simply doing here is focusing our case on the application and procedure which forced the plaintiffs unnecessarily to be detained in jail for six days, and at the time of the unconstitutional detention, all of the defendants in this particular case were aware that under state law 730 ILCS 5 slash 5 dash 6 dash 3 F, even convicted defendants electronically monitored as a condition of their probation may be transferred to a county of residence. Said another way, for Rooker-Feldman's purposes, you're accepting that the judge properly ordered this condition of being located locally? That is correct. And that the error, you're not suing the judge and you're not attacking that ruling? Correct. You're claiming the error was in the implementation of that ruling when there was a statute that allowed for relocation? Right, because the state's attorney who was prosecuting this matter should have been aware of the state law that provides for it. Why is that true? I mean, the only one who would have been arranging this would have been the probation office, right? Why would the state's attorney have any role in that? The prosecutor's role was to obtain an order as to his terms of release. Right. The probation, the state's attorney asked for the ODAR evaluation, which is an additional scrutiny. So what? The judge then entered the ruling. But this was after the bond was already posted. All right. Established $50,000 bond, defendant's relatives posted $5,000, 10% as required, which was released. At the next court date, without any warning, notice, state's attorney requests the ODAR evaluation under the domestic violence. But you don't have a problem with that? Well, he has a right to ask. It should have provided notice. We should have known. But that's prosecutorial discretion. Right. And then when the when the devaluation was done and the probation comes in with their report, again, the defense was not provided with a copy of the report. But to the state, you just told Judge Conley that you're accepting everything that happened in the state proceeding. That's right. We're not attacking the judge's right to or entry of that order. So the ODAR assessment is fine. They're allowed to put them on surveillance. I'm just trying to figure out how you are managing to dissect out your challenge to this particular custody requirement that there's a Lake County address. And I'll just throw out a bunch of other concerns on the table. One of my concerns is I don't read the statute to address pretrial detainees. It appears to address only people on probation. And the second problem is I can't figure out what his damages are because it looks to me as though he gets credit for the six days that he's detained pretrial when he gets the 12-day sentence. And we can't challenge the sentence without setting the conviction aside, which you're not asking us to do. The damage here, Your Honor, is that Mr. Jakubowicz was forced into an untenable situation. He was detained against his will where he wasn't necessary, having posted bond, having complied with the conditions. But that's a collateral attack on the guilty plea. And we certainly can't entertain that. No, you're right. You just did. I mean, you went right there. No, no. I'm just trying to illustrate a point, Your Honor, that this is not a collateral attack on the judge's right to make the order, is not issue the order, it's not the attack on the order. But your whole point is that he sits there in the jail in Lake County for what he doesn't know how long it's going to be. It winds up being six days because he decides to plead guilty to the telephone harassment. Correct. But there's nothing wrong on the face of things with that guilty plea. People plead guilty all the time, and maybe in part because they would just as soon come to grips with what they've done and get out, you know, and start serving their sentence. So unless you ask us to start unraveling that guilty plea and say, well, it was coerced, you know, whatever he said to the judge wasn't really right, all things that we really can't do, that would be way beyond our jurisdiction. And I don't want the court to misunderstand. We are not asking the panel to do that. We're simply accepting that as is, that court order, that plea, that whole process. Well, if you're accepting it all as is, then there's nothing wrong with the six days. What we're attacking here in our case and on appeal is the constitutionality of the process, which puts a pretrial detainee in a worse off position than a convicted defendant who is able to transfer their probation or electronic monitoring to another county that they're a resident of. Well, but isn't in this case you can't. Isn't there an important distinction there? The person is now on probation, presumably for at least a year, or at least some substantial period of time. The probation office knows that, and the aren't, they don't have residency, so they're not going to. So at that point you can see where the probation office feels an obligation to make some arrangements, whereas this is a pretrial, pre-plea, temporary period of time. Isn't there some discretion with the probation office, whether they, even, let's assume the statute even applies to that. Right. Isn't, don't they get some discretion to decide whether it's worth the trouble of working with a whole other county and placing period for a short, placing someone for a short period of time? In this case it was six days. Obviously they wouldn't necessarily know that, but it wasn't going to be a long period of time. What, even if the statute gave them permission, where's the clear constitutional violation when they decided it wasn't worth the trouble because it's going to be a short period of time? What the member of the probation office and the state's attorney's office did here is exercise and show intentional indifference, deliberate indifference, to the circumstances which they were creating through their conduct. You see, he's trying to come back to, we're accepting that this order was appropriate by the judge. Yes. And so they didn't create that. That's a given. That's a circumstance under which they were left. But, I agree, but there is a substantial amount of discretion in the manner in which the probation office implements that judge's order. But you just put your finger on the issue then. If there's substantial discretion with the probation office, how can the exercise of that discretion, where there's at least some justification for not rushing to make arrangements with another county, become deliberate indifference in a constitutional violation? They didn't rush at all. They stated it was impossible for them to implement the judge's order, meaning electronic monitoring, and there was no way ever that they were going to be able to transfer this. And the statement that there was no way ever is where in the record? That was in there, I believe, when the probation officer came into the court on our motion for reconsideration, where the judge says, you know, it doesn't matter. We know he's not the resident of Lake County. But it has to be after that, right? Because the judge just blessed that, and there you're back in a Rooker-Feldman problem. The judge, he went back in front of the judge, the judge said, yeah, I know that's a consequence. I'm sorry. You're going to stay there. So the judge blesses that. That's Rooker-Feldman. That is correct. As far as the judge is concerned, that is absolutely correct. So if the judge can say that, the probation office is still acting deliberately indifferent by implementing what the judge said was the intention of the order. Because if they can set up outside of Lake County electronic monitoring for those individuals who have been convicted of crimes or have pled guilty and are part of their probation department oversight process, they can do so with a pretrial detainee as well. They chose not to. They exercised deliberate indifference to the plight of Mr. Jakubowicz and told, too bad. Sit in jail. Not our problem. There's nothing we can do. And by doing so, I believe that they violated the Eighth Amendment of the United States Constitution. Okay. Well, if you would like to save a little bit of your rebuttal time, this would be a good time to do it. Thank you. Mm-hmm. Ms. Prager. Good morning. Good morning. May it please the Court, I'm Beth Prager. I represent Joe Foos, Mark Curran, Christine Hecker, and Terrence Barrett, appellees in this case. On behalf of my clients, I ask the Court to affirm the about the district court's disposition. If this really is, in the end, barred by Rooker-Feldman, that's a jurisdictional doctrine and we don't dismiss with prejudice for jurisdictional flaws. There might be some remedy in the state courts that we wouldn't want to see precluded because the point of Rooker-Feldman is you're just in the wrong court. You're in the wrong side of the street, so to speak. So shouldn't this be a dismissal without prejudice if there's a Rooker-Feldman issue? The court below found several bases for dismissing this case. But if there's no jurisdiction, she shouldn't have gone to the other bases. You would agree with that, right? If there was no jurisdiction pursuant to the Rooker-Feldman doctrine, yes. Okay. Yes, I agree. So we can argue in the alternative. I guess we can visit. Do you think there's a Rooker-Feldman? I mean the state, or the county, I'm sorry, raised this and then didn't really brief it in this court. Is that because you concluded for some reason there is no Rooker-Feldman problem? I believe it was briefed. Oh yeah, page 21. Sorry. It's brief. It's brief. Yeah. So yes, absolutely. I feel if you read through the appellant's briefs, you will see that what he's really arguing is what the judge in the criminal trial court decided regarding his electronic monitoring and the order for electronic monitoring. So he may not be seeking to overturn the final plea order, the order of conviction, but he is essentially attacking the judge's order requiring electronic monitoring and requiring the following his, the emergency motion where he understood that the Lake County address was a condition. All right, so let me let me ask you this about the Feldman half of Rooker-Feldman. Actually, that's a split decision. So in Feldman, the Supreme Court says that Mr. Feldman is not entitled to attack the precise decision on his ability to be admitted to the DC bar, but he is entitled to go forward with his general attack on the constitutionality of the standards that are being used. And so my question here is, if the essence of Mr. Jakubowicz's complaint is that it's, I'll just say, maybe a violation of substantive due process or something for a county in the state of Illinois to say, we will allow electronic surveillance of pretrial detainees only for people with addresses inside this county, no matter how proximate the other county is, no matter how easy it is, no matter how anything, why isn't that a generic attack on the law, sort of like the second half of the Feldman case and one that you can get over the bar? The requirement, that could have been attacked in the state court. Well, but in Feldman too, though, in the Feldman case, District of Columbia Court of Appeals against Feldman, the Supreme Court specifically says that the general attack on the rule, I think it was unaccredited bar, you know, or graduation from unaccredited law schools, that could go forward. It's just that Mr. Feldman couldn't say, District of Columbia Court of Appeals, you should have admitted me, because that would be review of their decision and they were analogized to a state and that was that. So I'm just wondering why he's not able to just pull out this rule. There might be other issues, there might be issues of standing, now that he's not subject to it anymore, but I'm not sure it's a Rooker-Feldman problem. Well, if he was allowed to go forward on the constitutionality of a rule by Lake County that says only people with Lake County addresses are entitled to this particular benefit, you could live someplace like the town I live in, which happens to straddle DuPage and Cook County, about a quarter of the towns in Cook and about three-quarters of it is in DuPage, and suddenly you would be told, oh, you know, you can't have electronic monitoring because you live in the DuPage half. The complaint didn't allege that. The complaint alleged that these four individual defendants should have transferred him or released him despite the judge's order and that they were deliberately indifferent for not actually going down to the jail and somehow providing a transfer or a release for this individual. Is there anything in the record that says there is such a generic rule? A generic rule? In other words, that there, in that county, there's no discretion for pretrial detainees from other counties. They're not allowed release. When you commit a crime in Lake County, you're subject to the jurisdiction of the Lake County Court? No, I understand. I'm trying to find out is, do you know, is there anything in this that refuses to allow release to another county even if it could be arranged? Yeah, like where is it written down? Is it some ordinance of Lake County? Is it in the Illinois? There's no rule that says that, that says it cannot be transferred. It is the way the electronic, the Jeep is, I understand it, I understand the technology exactly, but the way the technology works is you come into the jail where you meet with probation and they set up the GPS monitoring. That is a considerable process. That is contacting the victims, finding where the ranges are, where you are excluded from, and that is done county by county. No county in Illinois for pretrial detainees allows you to have an address outside of the county. You are being monitored. Do you know if it's because it, period. There is no exception. Period. Is it into some special room? Not that I have found. These are county by county programs. Whether it's the technology, how it works, or whether it's the probation officers only have jurisdiction in their own county, and the judge has put you under the jurisdiction of the probation department, and that's how the system works. Assuming that were something that could be challenged, your argument is that that's not before us in this case because their challenge was to deliberate indifference to a discretionary act. Correct. To these four individuals who had no individual participation, who, the three of them didn't even know that he was still being detained. How could they be indifferent to him by failing to release or transfer him? And you were saying that, in any event, they were all just following the judge's, Judge Collins' order? They were following the judge's order. Christine Barrett, author of the report, Hecker's, excuse me, author of the O'Dara report, she tested the plaintiff and submitted the report to the court, and she had no further involvement. She didn't know what the judge ordered. She didn't know that he didn't have a Lake County address. How could she possibly be responsible under Section 1983 for any deliberate indifference? Joe Foos, the state's attorney, did what he's supposed to do as a prosecutor. He asked for electronic monitoring because the report indicated that he was at risk, and this was necessary to protect the victims. So who are we left with? And he had no further involvement. The state's attorney now is supposed to go down, and that's just not how things work. That's not how, how would he have the authority to go down there after the judge already entered this order? So that leaves Curran or Barrett as the one who is responsible. Curran individually is Sheriff of Cook County. I'm pretty sure there are 600 detainees in the jail at any one time. I'm pretty sure Sheriff Curran had absolutely no personal knowledge of this specific detainee, and these are all individual claims. That leaves us with Barrett then. So Barrett, there are zero allegations about Barrett, other than he was the one who, zero factual allegations about how he was involved in this at all. Other than as a supervisor in the pretrial division. He's the pretrial unit manager? He's the pretrial unit manager, but not specific to this case. That he was responsible for developing policies and procedures, and that he could have developed a policy or procedure to transfer people to other counties. That's where I keep wondering, where are we at the general level, and where are we at the specific level? He, first of all, there are no policy claims. This is what he, this is against him individually, that he did not transfer him. Yeah, but that's the way it's done. Usually if somebody's following a policy that's an unconstitutional policy, you sue that person for injunctive relief. Forget about damages. I'm talking about more an ex parte young kind of suit. But the policy was that you needed to have a Lake County address. Now, if he had gone, and I don't know if there's a YMCA anywhere in Lake County, but if he had gone to some place that allows for very temporary residential arrangements, how expensive would that be? I don't know, but that happens often. In addition, his trial date was set for December 15th, so this was a two week issue. He had a court date set for four days later, where he very easily could have brought this up with the judge again and said, can you please give me my bond, my $500 bond back so I can pay for a residence until trial? There are various options that are worked out, but that never happened. Since none of that happened, and Barrett, you're ultimately saying Barrett is the last person standing with authority, but you're also saying they had no authority. There was a policy that was absolute that Barrett didn't have discretion. He just had to implement the order as entered by the judge because there was no policy in any county in the state that would allow you to create a second residence and work through a different county. Correct. There's no statutory authority like there is for probation and parole, for exactly the reasons that you explained earlier, because those are long term situations. And it's a complicated process to transfer the responsibility for monitoring and supervising an individual to another county. It's not done like that. Even pursuant to the statute that they rely on, it would have taken more than the five days he was in jail, because you would have to organize it. Or the two weeks before the actual trial? Or the two weeks before trial. So the transfer issue, I don't think would have helped, would have gotten him out any earlier. In addition, all of these defendants are immune. And it's simply unfair to, as another base, simply unfair to subject these defendants to a lawsuit. And one of the purposes of immunity, as I'm sure you're aware, is to protect people in positions like this from constant litigation, based on the nature of their work and the people they interact with. And if a state's attorney could be sued every time he requested bail, that someone couldn't meet for whatever reasons, and that happens very, very often, it would be opening the doors. Or when a probation officer wrote an unfavorable report, that person could be sued every time a judge raised the bail or did something adverse to them relying on the report. Their job would be very difficult, and that's the purpose of providing immunity. Are there any other questions? I don't see any, so thank you very much. Okay, thank you. Anything further, Mr. Parako? Thank you, Justice Susan. Very briefly, Judge Coleman should not have granted a motion to dismiss. It was premature. It was interpreting our complaint extremely narrowly, and it was inappropriate to do so, i.e., to dismiss the complaint without providing the plaintiff with the ability to amend the complaint. Could I ask you about the sheriff? I'm sorry? Could I ask you about the sheriff? Please. What authority would he have in this case? The sheriff has the authority under the state statute, the Sheriff's Act, and it provides where, for example, if the jail is overcrowded, for example, the sheriff on his own authority, pursuant to state statute, can, for purposes of crowding, overcrowding relief, release certain individuals on his own authority. Are you familiar with the Supreme Court case of People v. Kampah? Yes, that was the case. Isn't the Supreme Court pretty clear on how limited the sheriff has? There was a situation where the court ruled that the sheriff cannot set the bond or conditions of bond. He cannot unilaterally release a pretrial detainee on his own recognizance. So is it your position he should have gone back to the judge? Well, in fact, under the Act, for example, when there was a consent decree in place, the sheriff was granted the authority of a federal consent decree. A consent decree is a court direction to the sheriff. But the statute itself provides a sheriff with a discretionary ability. Well, how do you distinguish this case where the Supreme Court says they have no authority? Well, these are the cases where a bond has already been set. So there's a difference between cases where the accused has appeared before the judge and the judge set parameters of a bond of release versus those who have not yet gone to a bond hearing or are being held by the sheriff without having gone for a bond hearing itself. They're awaiting preliminary probable cause hearing or they're awaiting some other preliminary matters. The sheriff has discretion under those circumstances. Once the court sets the terms of a bond, I believe that that Supreme Court decision applies. It does. But in this particular case, the conditions that were created, counsel argued that the sheriff simply couldn't effectuate this. It needed too much time. They do that all the time with people who are in post-conviction phase, who have pleaded guilty or were found guilty or placed on an electronic monitoring date. They transfer them to other counties. So there is an ability to do that. And to answer your question about residency, I wanted to say that before I forget. The family of this gentleman, Mr. Jakubowicz, tried to get a long-term residency at a motel to satisfy the probation department. They said no. They tried to enter into a lease, month-to-month lease, and did. And the probation department said no, because his ID says he's a resident of Cook County. And therefore, you can't establish now, at whim, residency to satisfy our request. So they put a block to every possible way for Mr. Jakubowicz to try to appease and deal with the circumstances. Yeah, I appreciate your position on the probation department. I just have some difficulty with the sheriff. I don't see where he unilaterally could have done something. Are you suggesting the sheriff was aware of this, quote, policy, and therefore he should have done something? What I'm saying is that the sheriff didn't even have a policy. They didn't even have a policy for pre-detention processing of people for electronic monitoring purposes. And as we stated in our brief, this is a case of first impression, really. There are no cases under these factual circumstances that have dealt with this situation. So the sheriff, as we have argued, exercised deliberate indifference. He didn't know about this particular defendant, per se. But certainly, through the proceedings before the judge, through the participation of the state's attorney's office, through the participation of the probation department, there was awareness. There was paperwork. There was a file that went with this defendant. But the sheriff receives this prisoner. Yes. And what should he know that you're suggesting he should be aware of preceding his receipt of that prisoner? And under the direction, as I see the Supreme Court, that he on his own has no ability to release pre-detainees, subject obviously to a consent decree or an order. I'm just struggling with where we are with the sheriff. With respect to the sheriff, sheriff is just a elected official. Yeah, but where's his discretion? I understand your argument about the prosecutor. You can say the prosecutor never should have brought the charge because the prosecutor knows about these limitations. I understand your position on the probation department. But I just don't understand where the sheriff, in his ministerial limited role, is supposed to be aware of everything that occurred prior to his receipt of the prisoner. Receipt of the prisoner. That's right. And what he should have done on that day, I guess, is what I'm asking you. Where's his indifference? He should have talked to the state's attorney about why this charge was brought, knowing that he's a non-resident. I mean, it just gets a little challenging for me on the sheriff. Right, right. What the sheriff should have been aware of, or some agent or employee of the sheriff's office should have been aware of, that when the judge issued a minimum threat for taking this particular defendant into custody and it provided for an electronic monitoring release, that it was an impossibility that could never become fulfilled. And someone should have said, wait a minute here. You're asking us to do an impossible task. We cannot simply do anything under these circumstances with this particular defendant. But then that lets the probation office out because you're saying there was no possibility of doing anything. Well, they could have taken steps other than to say it's not our problem. Everyone here has said it's not our problem. The judge, of course, we were not questioning the judge. So you've got the sheriff, you've got the state's attorney, and you've got the probation office all threw up their hands in the air and said, well, too bad. Yeah, it's a problem, but we're not going to deal with it. Okay, Mr. Pryor, I think we need to wrap this up. Thank you very much. Thanks as well to Ms. Prager. We'll take the case under advisement.